UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
Buffalo Division

**JAMIE DEWATERS,**

          **PLAINTIFF,**

**V.**

**D'YOUVILLE COLLEGE,**

          **DEFENDANT**

**Civil Action No.**

_____

**Jury Trial Demanded**

## COMPLAINT

Plaintiff, Jamie DeWaters, alleges as follows:

### THE PARTIES

1. The Plaintiff, is a natural person, is over forty years of age, with a place of residence in Erie County, New York.

2. The Defendant, D'Youville College, is a corporation with its principal offices at 320 Porter Avenue, Buffalo, NY 14201.

### JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-5 and 28 U.S.C. §§ 1331 and 1343.

4. Venue is properly laid within the Western District of New York pursuant to 28 U.S.C. § 1391(b) in that the Plaintiff lives in the Western District of New York, Defendant is located in the Western District of New York, and a substantial part of the acts or omissions giving rise to the claim occurred in the Western District of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff has exhausted all administrative remedies prerequisite to bringing this claim as follows:

6. On, December 12, 2018 the Plaintiff filed a charge of discrimination with the New York State Division of Human Rights alleging unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of age. The matter was assigned NYSDHR Case Number 10198528.

7. The matter was cross filed with the United States Equal Employment Opportunity Commission (EEOC) and given Federal Charge Number 16GB901110.

8. On June 12, 2019 the New York State Division of Human Rights issued a Determination and Order After Investigation which found No Probable Cause. The matter was dismissed and the NYSDHR file was closed.

9. The Plaintiff timely requested EEOC review of the NYSDHR findings. The EEOC issued a Dismissal and Notice of Rights on October 21, 2019 which date results in a final date to file a claim in federal court of, January 19, 2020.

## TIMELINESS

10. When filing with a state agency the Plaintiff has three hundred (300) days to bring a claim when using a state agency 42 U.S.C. 2000e.

11. The Plaintiff's DHR Complaint filed on December 12, 2018 alleged that the most recent discriminatory act occurred on September 7, 2018. This gives a latest date to file a claim with the Division of Human Rights of September 7, 2019. For the federal case the "look back" period extends back from the filing date to February 15, 2018.

## FACTUAL BACKGROUND

2

12. The Plaintiff was hired by the Respondant in January,1981. The Plaintiff held the position of Professor of Special Education until September 7, 2018 when the Defendant abolished the Education Department, eliminated its programs and fired the Plaintiff.

13. According to the Defendant, the Plaintiff was fired because the Education Department and its programs were officially eliminated.

14. Months later, however, the Defendant introduced a "new" Masters of Curriculum and Instruction (C&I) Education Program staffed with cost-saving, low-salaried, adjunct faculty. The Defendant, in fact, simply implemented the recently abolished C&I Program that the Plaintiff and Education faculty had developed in 2013 and taught since 2017. The Defendant's so-called "new" C&I Program duplicates the original curriculum including identical course titles and code numbers. The Defendant claims of offering a new or modified C&I Program is untenable.  Having dissolved the Education Department and its members in September 2018, the Defendant lacked the requisite staff, expertise and time to offer a new C&I Program by January 2019. Reinstating and marketing the original C&I Program and staffing it with low-cost adjuncts bereft of fringe benefits, openly contradicts the Defendant's rationale for firing the senior Plaintiff.

15. The original C&I Program abides despite the Defendant's August 2018 claim on the College's website that the Education Department—along with its programs and faculty -- was being abolished. Simply put, the Defendant fired the senior Plaintiff by falsely claiming that the Education Department and its programs were being officially abolished.

16. In August 2019, the Defendant offered a class known as EDU 622 ("Exceptional Learners") consonant with its "new" C&I Program.  To save money, the Defendant assigned a low-cost adjunct with no fringe benefits to teach EDU 622 – a course the Plaintiff designed in

3

2011 and taught until 2016. As a cost saving matter, the Defendant opted to staff EDU 622 and other courses in the C&I Program with part-time, low-cost adjuncts -- rather than full-time, senior, tenured, high-cost faculty. To justify its cost-saving decision and fire the Plaintiff, the Defendant had to offer a "new" C&I Program.

17. The administrator tasked with recruiting an adjunct to teach EDU 622 on-line illicitly offered the applicant the Plaintiff's syllabus. The applicant, aware that using someone else's syllabus without permission constituted a copyright violation, withdrew her candidacy. It is unknown who was subsequently recruited to teach EDU 622 scheduled to be taught from August 19, 2019 – October 6, 2019.

18. Several instructors teaching in the "new" C&I Program include two D'Youville junior administrators under the age of forty. Hiring a host of low-cost adjuncts without fringe-benefits and tasking two junior administrators to teach in the C&I Program teaching clearly evidences the Defendant's cost-saving motive to fire the Plaintiff. *Simply stated, seniority-driven cost savings is the obvious reason the Defendant fired the Plaintiff.*

19. D'Youville College faculty is represented by a chapter of the American Association of University Professors (AAUP) union. The Collective Bargaining Agreement (CBA) between these two entities states the following: "In the event a program or position which has been reduced or eliminated is reactivated or reinstated within a period of two (2) years, the faculty member or librarian whose services were terminated because of the reduction or elimination shall be offered the position he/she formerly held."

20. A Memorandum of Agreement between the Defendant and the AAUP states: "In the event the Education Department is reinstituted any time prior to the beginning of the 2022-2023 academic year, the members of the Education Department Faculty shall have a right to be

4

rehired" Accordingly, the Defendant failed to abide by (1) The Collective Bargaining Agreement between the AAUP and the College's Board of Trustees and (2) The Memorandum of Understanding between the AAUP and the Defendant.

21.     In discharging the Plaintiff, the Defendant violated the Collective Bargaining Agreement and long-standing College norms and procedures regarding termination of tenured faculty. President Clemo refused to provide the Union with requisite documents related to retrenchment and severance as mandated by the CBA.  Furthermore, President Clemo denied the Union and the Plaintiff access not only to the Board of Trustees but also participation in the retrenchment process.

22.     President Clemo never consulted the Plaintiff nor her Education colleagues regarding reassignment as mandated by the CBA.  Simply stated, retaining and reassigning tenured faculty proved too costly based on their seniority.  In her termination letter to the Plaintiff, President Clemo states, "There are no other, suitable, available positions at the College." Actually, there were suitable and available positions the Plaintiff could have filled. However, reassignment was never mentioned, discussed or offered to the high-salaried Plaintiff.

23.     When the Union President, Dr. Marge Goodman, learned that the Defendant continued to offer the original C&I Program, Dr. Goodman insisted that the Defendant immediately reinstate the Plaintiff and other Education faculty members. According to a statement by the VP for Academic Affairs, Dr. Mimi Steadman, the Defendant could not bear the cost of reinstating the senior and tenured Plaintiff and her colleagues.  The Defendant fired the Plaintiff because her seniority or age commanded a high salary.  In this case age discrimination and cost-savings are inseparably linked.

24. The Defendant claimed that the Plaintiff was fired and the Education Department was dissolved because of low-enrollment. However, this claim is patently false. In the Fall of 2016, the Board of Trustees and the administration opted to cease enrolling students in order to rebuild its Education program. Contrary to the Defendant's claim, enrollment in the Education Program was officially suspended during the Department's rebuilding stage which occurred between 2016 and 2018. Dr. Clemo in her dismissal letter to the Plaintiff cites "low enrollments dating back to before 2012" as the grounds for her dismissal. The Spring 2018 semester – by virtue of the Board of Trustee's decision to suspend enrollment during the rebuild phase -- was the only time the C&I Program had no students.

25. When the Board of Trustees made this decision they promised not to retrench the Education Department. Instead the Board gave a direct order and mandate to rebuild anew the entire education program to match the shifting directions of teacher education programs for the foreseeable future. The deadline to complete this rebuilding was the Fall of 2020.

26. During its rebuilding stage, the Plaintiff and other Department members researched scores of thriving education programs at competitive institutions to furnish Dr. Clemo with a host of viable models and options to enhance enrollment and augment tuition revenue. Inexplicitly, President Clemo ignored these viable and potentially lucrative models and options. In fact, President Clemo and the Vice President for Academic Affairs (Dr. Mimi Steadman) never met with Department members to consider their lucrative and attractive proposals. President Clemo also failed to seek the requisite New York State Education Department approval to implement by the Spring of 2018 four innovative and highly profitable graduate certificate programs developed by the Plaintiff and her colleagues. Seemingly, the Defendant had no

interest in rebuilding the Education curriculum or offering innovative certificate programs because President Clemo had no intention of retaining the senior Plaintiff and her colleagues.

27. President Clemo waited until mid-August of 2018 to convene an extraordinary Board of Trustees (BOT) meeting in order to abolish the Education Department, whose members were then currently on semester break. President Clemo terminated the Plaintiff by email in late August 2018, thereby denying her any reasonable opportunity to seek an academic position elsewhere. Traditionally, tenured faculty have been notified five to twelve months prior to being dismissed. However, the Defendant shamefully notified the Plaintiff -- a senior, tenured, award-winning faculty member with over thirty-seven (37) years of service – only ten days prior to her termination. The Defendant's failure to provide adequate notice of termination – in breach of the Collective Bargaining Agreement -- prevented the Plaintiff from securing a teaching position at another institution. And, as noted above the Board decision of 2018 was directly against its previous order of 2016 regarding rebuilding the education program and the promise not to retrench.

28. When the Plaintiff and her colleagues were fired in late August 2018, they were engaged in designing an online Master's Degree for students in India at the behest of Dr Clemo and V.P. Joggeshwar Das. This initiative constituted Dr. Clemo's underlying plan to fire the Plaintiff. However, Dr. Clemo failed to consider the complex issues associated with marketing her affordable and viable online C&I Program for Indian graduate students. If the India Master's Degree Program had been properly researched, marketed, priced and implemented, Indian students could have easily enrolled in the Fall 2018. The India Program – offering a Master's in Education – rests on the C&I curricular platform originally developed by the Plaintiff and her colleagues in 2013.

29. The Plaintiff is a highly educated, experienced and accomplished professor, scholar, consultant and mentor. In addition to earning a Ph.D. in Educational Research and Evaluation, the Plaintiff holds a Master's in Education/Speech & Hearing Handicapped and a Bachelor's in Speech and Hearing Handicapped. During the Plaintiff's tenure at the College, she authored multiple publications, including peer-reviewed journal articles and individual book chapters. Her research efforts earned her D'Youville's "AAUP Faculty Scholar Award." Flowing from her extensive research on college teaching and learning, the Plaintiff published *Successful College Teaching*: *Problem-Solving Strategies of Distinguished Professors* (Allyn & Bacon). The Plaintiff has also received numerous national and international consulting invitations. From 1990-1997 the Plaintiff directed D'Youville's highly lucrative Canadian Field Experience Program establishing affiliations with the *Canadian Ministry of Education* and individual school boards in Canada. The Plaintiff not only placed and supervised Canadian post-baccalaureate students attending D'Youville College, but also recruited and coordinated Canadian supervisory personnel. The Plaintiff's work with Canadian administrators and students produced substantial revenue for the College over many years.

30. All of the Plaintiff's employment evaluations were consistently excellent.

31. The Plaintiff's expertise in college teaching and learning and also in faculty mentoring is ideally applicable to the College's newly created "Institute on Teaching Innovation." The Plaintiff's experience and training in guiding and supervising research projects, makes her a perfect fit for the College's nascent Doctoral Program in Educational Leadership. The Plaintiff has conducted multiple research projects with local, regional and statewide school districts.

32. The Plaintiff -- who directed D'Youville's voluntary Faculty mentoring program for junior faculty and whose specialty is Special Education – is the perfect resource to help Health-related faculty deliver quality teaching and learning.

33. The Plaintiff, having served twice as Education Department Chairperson, has demonstrable administrative skills

## FIRST CAUSE OF ACTION:
### Violation of the Age Discrimination in Employment Act

34. Plaintiff repeats each and every allegation set forth herein in preceding paragraphs as though fully set forth herein.

35. The *prima facie* elements of discrimination claims under the ADEA are "not onerous."[1] A plaintiff may make out a *prima facie* case with either circumstantial or direct evidence of discriminatory intent.[2] Circumstantial evidence is by far the most common.[3] A plaintiff making out a *prima facie* case of discrimination with circumstantial evidence must 1) identify a protected class, 2) identify an adverse action, 3) show that a) the Plaintiff was qualified for the job and b) that the work still being performed.[4]

**Element 1) Protected Classes**

36. Dr. DeWaters is over the age of forty.

**Element 2) Adverse Actions**

37. Dr. DeWaters was issued a notice of dismissal from her position with the Defendant on September 7, 2018.

---

[1] Texas Dept. of Community Affairs v Burdine, 450 US 248, 253 [1981]
[2] Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511-12, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002), *citing Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985).
[3]
[4] McDonnell Douglas Corp. v Green, 411 US 792, 802 [1973], *see also Young v. UPS*, 135 S.Ct. 1338 (2015).

38. The dismissal did not follow the rules and practices of the Defendant. Further the dismissal was in violation of the existing Collective Bargaining Agreement.

39. Dr. DeWaters was well qualified to assume suitable administrative and teaching positions at the College in accordance with the Collective Bargaining Agreement.

40. Dr. DeWaters was not offered any other position.

41. There are untenured, younger, lower-salaried and less experienced individuals who occupy positions the Plaintiff could have competently assumed.

### Element 3 (a) Plaintiff was Qualified for the Jobs Held and Applied For

42. Dr. DeWaters -- an exceptionally well qualified professor -- had the seniority, education and experience to assume a host of other faculty or administrative positions at the College.

### Element 3 (b) Work was Still Being Performed

43. The courses that Dr. DeWaters developed and taught are currently being marketed and taught by low-cost adjuncts at the behest of the Defendant.

### Additional Evidence of Age Bias

44. Individuals who are younger, lower-salaried, less qualified and less experienced than the Plaintiff have been appointed to teaching and administrative positions.

**WHEREFORE**, Plaintiff respectfully requests from this Court the following relief:

A. That the Defendant compensate the Plaintiff for lost wages and associated benefits including any effects on the Plaintiff' retirement benefits based on the Plaintiff's rights under the Age Discrimination in Employment Act;

B. That the Defendant pay the Defendant $300,000 in damages for the stress, anxiety and humiliation associated with Defendant's unlawful dismissal;

C.	That the Defendant reimburse the Plaintiff's for all medical and health insurance costs resulting from her unlawful dismissal including any and all diagnostic analysis, treatment and therapy, and follow up therapy.

D.	That the Defendant to pay the Plaintiff the costs and disbursements of this court action, together with reasonable attorneys' fees;

E.	That the Defendant provide the Plaintiff with any additional damages that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly trial by jury in this action.

Dated:	_____

Respectfully Submitted,
Plaintiff
By Her Attorneys

 /s/  Lindy Korn                          /s/ Charles L. Miller, II   
LINDY KORN, ESQ.                    CHARLES L. MILLER, II, ESQ.
Attorney for Plaintiff                    Attorney for Plaintiff
Law Office of Lindy Korn, PLLC          Law Office of Lindy Korn, PLLC
Electric Tower, Ninth Floor              Electric Tower, Ninth Floor
535 Washington Street                    535 Washington Street
Buffalo, New York 14203                  Buffalo, New York 14203
716-856-5676                             716-856-5676
716-507-8475 (facsimile)                 716-507-8475 (facsimile)
E-Mail: lkorn@lkorn-law.com              E-mail: cmiller@lkorn-law.com