UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

JAMIE DEWATERS,

      Plaintiff,

   v.                                 20-CV-29-LJV-MJR
                                                  DECISION & ORDER

D'YOUVILLE COLLEGE,[1]

      Defendant.

───────────────────────────────

On January 9, 2020, Jamie DeWaters commenced this action under the Age

Discrimination in Employment Act ("ADEA") against her former employer, D'Youville

College ("D'Youville").  Docket Item 1.  After the case was referred to United States

Magistrate Judge Michael J. Roemer for all proceedings under 28 U.S.C. § 636(b)(1)(A)

and (B), Docket Item 11, D'Youville moved for summary judgment on November 4,

2022, Docket Item 32.  On February 6, 2023, DeWaters responded, Docket Item 39,

and on February 28, 2023, D'Youville replied, Docket Item 43.  On August 3, 2023,

Judge Roemer issued a Report and Recommendation ("R&R") finding that D'Youville's

motion should be granted.  Docket Item 45.

On September 20, 2023, DeWaters objected to the R&R.  Docket Item 48.  On

October 11, 2023, D'Youville responded to the objections.  Docket Item 52.  And on

November 1, 2023, DeWaters replied.  Docket Item 55.

───────────────────────

[1] "D'Youville College" is now "D'Youville University."  Docket Item 32-8 at 6 n.2.
But "because this action was commenced when it was still a college and no amendment
of the caption has been requested," D'Youville refers to itself as "the College"
throughout its briefing.  *Id.*

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, response, and reply; and the materials submitted to Judge Roemer. Based on that *de novo* review, the Court accepts and adopts Judge Roemer's recommendation to grant D'Youville's motion for summary judgment.

## BACKGROUND[2]

DeWaters—who is "over [40] years of age"—was hired by D'Youville in 1981. Docket Item 1 at ¶ 1, 12. She served as a "full-time faculty member" of the Education Department (the "Department") until September 7, 2018, when D'Youville "discontinue[d]" the Department "due to . . . lack of enrollment." Docket Item 45 at 2-3. DeWaters alleges that although D'Youville claimed to be wholly shuttering the Department, it in fact maintained a "so-called 'new'" Curriculum and Instruction ("C&I") Program that "duplicates . . . curriculum" that had been "developed" by DeWaters and other members of the Department in 2013. Docket Item 1 at ¶¶ 14-15.

DeWaters asserts that "[a]s a cost[-]saving matter, [D'Youville] opted to staff . . . courses in the C&I Program with part-time, low-cost adjuncts—rather than full-

---

[2] The Court assumes the reader's familiarity with the facts alleged in the complaint, *see* Docket Item 1, and Judge Roemer's analysis in the R&R, *see* Docket Item 45, and refers to them only as necessary to explain its decision. On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party. *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

time, senior, tenured, high-cost faculty."  *Id.* at ¶ 16; s*ee also id.* at ¶ 18 ("[S]eniority-driven cost savings [were] the obvious reason [D'Youville] fired [DeWaters]." (emphasis omitted)).  And that, she says, violated the ADEA.  *Id.* at ¶¶ 34-44.

D'Youville disputes DeWaters's narrative.  It argues that "[t]he record is devoid of evidence showing that D'Youville harbored any unlawful discriminatory animus against [DeWaters]."  Docket Item 32-8 at 5.  Instead, it contends, "the record shows that [DeWaters's] employment was terminated for a legitimate, [nondiscriminatory] reason": "that the . . . Department was discontinued due to lack of enrollment."  Docket Item 32-8 at 12; *see also* Docket Item 32-1 at ¶¶ 3-9 (statement of facts regarding the discontinuation of the Department).

D'Youville also says that the C&I Program was "[u]nlike the programs that were generally offered by the . . . Department."  Docket Item 32-1 at ¶ 11.  For example, D'Youville says, in contrast to the Department's other offerings, the C&I Program "was not designed as a teacher preparation program" but rather was "offered only after [D'Youville] entered into a contract in 2017 with certain Indian entities, all of whom jointly committed to offering a program to Indian students."  *Id.*  According to D'Youville, the C&I Program was offered only in 2019 as a "one-year, [online] program"; only three students were enrolled; and it was "never offered again."  *Id.* at ¶ 12.

Judge Roemer agreed with D'Youville and recommended that its motion for summary judgment be granted.  Docket Item 45.  First, he found that DeWaters had not established a "*prima facie* case" of age discrimination because she had "fail[ed] . . . to show that her termination occurred under circumstances giving rise to an inference of discrimination."  *Id.* at 8.  Judge Roemer observed that "[a]lthough [DeWaters] claims

3

that she was fired from her position and replaced by [] less qualified and younger individual[s], [she] offers no evidence, circumstantial or direct, to create an inference that D'Youville fired her due to age discrimination." *Id.*  And he further found that "[e]ven if [DeWaters] had established a *prima facie* case, she has failed to show that D'Youville's proffered [nondiscriminatory] reason for firing her was pretext for age discrimination." *Id.* at 11.  Accordingly, he concluded that "there are no genuine issues of material fact and [that DeWaters] cannot support a claim of age discrimination." *Id.* at 15.

DeWaters objected to the R&R on several grounds.  Docket Item 48 at 2-4.  For the reasons that follow, the Court agrees with Judge Roemer and grants D'Youville's motion for summary judgment.

## **LEGAL PRINCIPLES**

### I.    **SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56, a court appropriately grants summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant"—that is, the party seeking summary judgment— "has the burden of showing that there is no genuine issue of fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The movant may satisfy its burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the [non-moving] party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51

F.3d 14, 18 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986));
*see* Fed. R. Civ. P. 56(c)(1)(B).

Once the movant has satisfied its initial burden, the non-moving party "must
come forward with specific facts showing that there is a genuine" dispute of material
fact—that is, that a "rational trier of fact [could] find for the non-moving party" on the
"record taken as a whole."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
574, 587 (1986) (citations, emphasis, and internal quotation marks omitted).  If the non-
moving party fails to do so, the court will grant summary judgment.  *See Celotex*, 477
U.S. at 322-23; Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the
outcome of the suit under the governing law will properly preclude the entry of summary
judgment."  *Anderson*, 477 U.S. at 248.

In deciding a motion for summary judgment, "[t]he [C]ourt must view the evidence
in the record in the light most favorable to the non-moving party" and "draw[] all
reasonable inferences in that party's favor."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239
F.3d 456, 465-66 (2d Cir. 2001).  But "conclusory statements, conjecture, or speculation
by the party resisting the motion will not defeat summary judgment."  *Kulak v. City of
New York*, 88 F.3d 63, 71 (2d Cir. 1996); *see also Matsushita*, 475 U.S. at 586 (non-
moving party "must do more than simply show that there is some metaphysical doubt as
to the material facts" to defeat summary judgment when moving party has met its
burden).  Instead, under Rule 56, the party opposing a motion for summary judgment
must "properly support an[y] assertion[s] of fact" by "citing to particular parts of materials
in the record, including depositions, documents, electronically stored information,
affidavits or declarations, stipulations (including those made for purposes of the motion

only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 324.  And "[w]hile evidence produced by the party opposing a summary judgment motion need not be in a form that would be admissible at trial, its content must nonetheless be admissible."  *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 675-76 (S.D.N.Y. 2012) (internal citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(4) (requiring that "[a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

## II.    ADEA

Under the ADEA, it is "unlawful" for employers to "fail or refuse to hire," "discharge," or "otherwise discriminate against" an employee or potential employee "because of [that] individual's age."[3]  29 U.S.C. § 623(a)(1); *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120 (1985) ("Section 4(a)(1) of the [ADEA] proscribes differential treatment of older workers with respect to a privilege of employment." (alterations, citation, and internal quotation marks omitted)).  Courts "analyze ADEA claims under the same framework as claims brought pursuant to Title VII," *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (citation and internal quotation marks omitted), which prohibits employers from discriminating on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a).

---

[3] The ADEA applies only to "individuals who are at least 40 years of age."  29 U.S.C. § 631(a).

Plaintiffs may prevail on an employment discrimination claim in one of two ways. First, a plaintiff may "present direct evidence of discrimination." *Johnson v. New York*, 49 F.3d 75, 78-79 (2d Cir. 1995) (citing *Thurston*, 469 U.S. at 121 (1985)). Alternatively, a plaintiff may produce indirect evidence that satisfies "the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."[4] *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005); *see Johnson*, 49 F.3d at 78-79.

A plaintiff taking the second approach "bears the initial burden to establish a *prima facie* case of age discrimination." *Woodman*, 411 F.2d at 76. "To establish a *prima facie* case, a plaintiff with an age discrimination claim must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (italics added and internal quotation marks omitted); *see McDonnell Douglas*, 411 U.S. at 802. If a plaintiff meets that initial burden—which the Second Circuit has characterized as "*de minimis*," *Abdu-*

---

[4] The Supreme Court has never explicitly held that *McDonnell Douglas* applies to age discrimination claims. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) (assuming without deciding that "the *McDonnell Douglas* framework is fully applicable" to ADEA case); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009) ("[T]he Court has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context." (citation omitted)). But the circuit courts, including the Second Circuit, generally have held that it does. *See Reeves*, 530 U.S. at 141-42 (collecting cases); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 n.3 (2d Cir. 2021) ("Although the Supreme Court has left open whether the evidentiary framework of *McDonnell Douglas* is appropriate in the ADEA context, we remain bound by our precedent to apply the framework to ADEA claims." (citation and internal quotation marks omitted)).

*Brisson*, 239 F.3d at 467—the burden shifts to the employer, who must "offer a legitimate, nondiscriminatory business rationale for its actions." *Schnabel*, 232 F.3d at 87. "If the employer articulates such a reason, the plaintiff has the burden of proving that . . . age was the real reason for [the plaintiff's] discharge." *Id.*

While the Second Circuit has "sometimes noted that an extra measure of caution is merited" when considering motions for summary judgment in discrimination cases, it has made clear that "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted); *see also Abdu-Brisson*, 239 F.3d at 466 ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."). For example, summary judgment has been found appropriate when the plaintiff fails to establish a *prima facie* case of employment discrimination. *See Ruszkowski v. Kaleida Health Sys.*, 422 F. App'x 58, 61 (2d Cir. 2011) (summary order).

## **DISCUSSION**

## I.    **SUMMARY JUDGMENT STANDARD**

DeWaters's first and central objection is that Judge Roemer applied the incorrect summary judgment standard. Docket Item 48 at 2 (arguing that "[t]he R&R is based on a number of errors[,] [e]ach of [which] . . . stems from a single principal error—[that] the R&R does not subject [D'Youville's] assertions of 'undisputed material facts' to the test required by law"). More specifically, she argues that a motion for summary judgment must be evaluated according to a "stringent pair of tests," and may be granted only if the moving party "passes the first test" and the non-moving party "fails the second test." *Id.*

at 5 (footnotes omitted).  Because the parties did not agree on all material facts, DeWaters says, D'Youville was required to "foreclose on [sic] any possibility that [DeWaters's] theory of the case is true. . . . by conclusively proving . . . its version of events."  *Id.* at 6 (footnotes omitted).  She argues that D'Youville did not meet that bar, rendering summary judgment improper.  *Id.* at 7.

This Court disagrees.  DeWaters is correct that the movant—that is, the party seeking summary judgment—has the burden of demonstrating that there are no disputed material facts.  *Anderson*, 477 U.S. at 256.  But once a movant has made that showing, there is no additional requirement that the movant "conclusively prove" the truth of its case and "foreclose on [sic] any possibility" of the truth of its opponent's.  *See* Docket Item 48 at 6.  And when the non-moving party bears the ultimate burden of proof, the moving party can meet its summary judgment burden by noting the "absence of evidence" on an "essential element of the [non-moving] party's case," and the non-moving party then must proffer admissible evidence creating a genuine issue of fact on that element.  *See Celotex*, 477 U.S. at 323-25.

DeWaters essentially argues that conclusory assertions of material facts can defeat a motion for summary judgment.  *See* Docket Item 48 at 6.  But she cites no case law to support that contention,[5] *see generally id.*, which the Supreme Court

---

[5] Although DeWaters's contentions about the proper summary judgment standard include numerous footnotes citing case law, the cases cited are inapposite. *See generally* Docket Item 48.  And it is unclear where DeWaters got the idea that D'Youville is required to "conclusively demonstrate" not only the absence of disputed material facts but also the truth of its own theory of the case. *See id.* at 2-10.  As D'Youville points out, DeWaters attempts to support that contention by citing a line from *Tolan v. Cotton* that merely quotes the text of Rule 56—and nowhere mentions any requirement for a "conclusive[] demonstrat[ion]." *See* Docket Item 52 at 7; *see also* Docket Item 48 at 4 & n.3; *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

specifically disclaimed in *Celotex*.  There, the Court found that Rule 56 did not require

"the party moving for summary judgment to produce evidence showing the absence of a

genuine issue of material fact, even with respect to an issue on which the [non-moving]

party bears the burden of proof."  *Celotex*, 477 U.S. at 325.  In other words, Rule 56

contains "no express or implied requirement . . . that the moving party support its motion

with affidavits or other similar materials *negating* the opponent's claim."  *Id.* at 323.

Instead, in such cases, a party may satisfy its burden "by 'showing'—that is, pointing out

to the district court—that there is an absence of evidence to support the [non-moving]

party's case."  *Id.* at 325.

---

DeWaters replies that her asserted standard derives from the Supreme Court's decisions in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), and *Reeves*.  Docket Item 55 at 3-4 & n.3.  But the language that DeWaters relies on from *Adickes* was limited by the Court's later decision in *Celotex*.  *See supra* at 9-10; *Celotex*,  477 U.S. at 325 ("[W]e do not think . . . *Adickes* . . . should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the [non-moving] party bears the burden of proof.").  And *Reeves*—which does include several references to "conclusive[] demonstrat[ions]," *see Reeves*, 530 U.S. at 148, 153; *see also id.* at 154-55 (Ginsburg, J., concurring)—is nonetheless inapposite.  In that case, the Court held that when a plaintiff established a "*prima facie* case of discrimination and sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action," *id.* at 137, the employer would not normally be entitled to judgment as a matter of law, unless "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  *Id.* at 148.  It certainly did not hold that an employer always was required to "conclusively demonstrate" the truth of its version of events to be entitled to judgment as a matter of law (or summary judgment) in an employment discrimination case—even when the plaintiff offered no direct or circumstantial evidence of discrimination.  *See id.*

Because this Court finds no requirement that D'Youville "conclusively demonstrate" the truth of its theory of the case to prevail on its motion for summary judgment, it need not reach D'Youville's alternative argument that—though it was not required to—it did so here.  *See* Docket Item 52 at 7-8.

In employment discrimination cases such as this one, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (sex discrimination); *Reeves*, 530 U.S. at 143 (age discrimination). So because DeWaters bore the "ultimate burden" of proof here, D'Youville could satisfy its Rule 56 burden by "pointing out," *see Celotex*, 477 U.S. at 325, that DeWaters had not produced evidence sufficient to allow a "jury [to] . . . reasonably find an invidious discriminatory purpose on the part of an employer," *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001), *superseded in part on other grounds by* Fed. R. Civ. P. 37(e).

In sum, as Judge Roemer held, D'Youville can—and did—meet its initial burden by showing that DeWaters had not produced evidence sufficient for a jury to find that D'Youville violated the ADEA. *See generally* Docket Item 45. Once D'Youville did that, it was up to DeWaters to produce evidence sufficient to create an issue of fact as to discrimination. And as Judge Roemer correctly found, DeWaters failed to do that here. *See* Docket Item 45 at 2 n.1. Instead, her opposing statement "contains numerous assertions of fact that are wholly unsupported by any sworn statement, testimony, or other admissible evidence." *Id.*; *see generally* Docket Item 39-1 at 2-15. And the exhibits she offered in opposition to D'Youville's motion for summary judgment range from irrelevant to unreadable to unsworn assertions that do not comply with the requirements of Rule 56. *See* Fed. R. Civ. P. 56(c)(1)(A); Docket Items 39, 39-1, 39-3, 39-4, 39-5, 39-6, 39-7, 39-8, 39-9, 39-10, 39-11, 39-12, 39-13, 39-14.

Judge Roemer did not misstate the summary judgment standard. And for the reasons that follow, he applied the correct standard correctly in this case.

## II.     ADEA

In addition to arguing that Judge Roemer applied the incorrect legal standard, DeWaters argues that Judge Roemer substantively erred in finding that her ADEA claim should not survive summary judgment. Docket Item 48 at 3-4. She objects to Judge Roemer's analysis on five grounds: (1) that it "mischaracterizes [her] assertion of evidence of discriminatory intent"; (2) that it "declares that disposing of older, higher paid workers *cannot be* evidence of age discrimination" in contravention of Congress's purpose in enacting the ADEA; (3) that it fails to properly consider a chart that DeWaters proffered; (4) that it requires her to "rebut" D'Youville's assertion of a legitimate nondiscriminatory reason even though there is "direct evidence of [D'Youville's] age bias"; and (5) that in sum, it incorrectly applied the summary judgment standard here. *Id.*

### A.     Mischaracterization of DeWaters's Evidence

To survive a motion for summary judgment, a plaintiff alleging employment discrimination must produce "direct evidence of discrimination," *see Thurston*, 469 U.S. at 121, or satisfy the *McDonnell Douglas* framework by (1) establishing a *prima facie* case of age discrimination and (2) rebutting as "pretextual" any "legitimate nondiscriminatory reason" asserted by the employer for the adverse employment action. *See Schnabel*, 232 F.3d at 87-91. As discussed above, to establish a *prima facie* case, four elements must be shown. *Bucalo*, 691 F.3d at 129. Judge Roemer found that DeWaters had failed to establish the fourth of those elements—namely, that she failed

to show "that her termination occurred under circumstances giving rise to an inference of discrimination." Docket Item 45 at 8; *see Bucalo*, 691 F.3d at 129. More specifically, Judge Roemer found that because DeWaters "assert[ed] that the motive for her termination was cost savings," she had failed demonstrate discriminatory intent. Docket Item 45 at 8; *see* Docket Item 1 at ¶¶ 16, 18, 22, 23; Docket Item 39 at 5-7.

The Supreme Court has held that liability under the ADEA "depends on whether . . . age . . . actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). It reasoned that "[w]hen the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. . . . even if the motivating factor is correlated with age, as pension status typically is." *Id.* at 611. And so it held that such decisions do not violate the ADEA, *id.* at 611-12; *see also Criley v. Delta Air Lines*, Inc., 119 F.3d 102, 105 (2d Cir. 1997) ("[D]ecisions motivated by economic concerns do not violate the ADEA."). Therefore, as Judge Roemer found, if DeWaters is alleging that D'Youville fired her for financial reasons, she has no viable claim under the ADEA. *See* Docket Item 45 at 8.

DeWaters does not argue that Judge Roemer misconstrued that case law; instead, she argues that the R&R "mischaracterizes [her] assertion of evidence of discriminatory intent." Docket Item 48 at 3. Specifically, DeWaters takes issue with Judge Roemer's statement that she "assert[ed] that the motive for her termination was cost savings." Docket Item 45 at 8; Docket Item 48 at 3. DeWaters says that "[t]he R&R offers no citation for this assertion" and that "[a] review of the record demonstrate[s] that [her] articulation of the *prima facie* case differs from that presented by the R&R and . . . is in accord with Supreme Court precedence [sic]." *Id.* at 3.

According to DeWaters, "[w]hile [she] acknowledge[d] that cost may have been *a* factor espoused by the administration, [she] has never accepted that cost was the *only* factor." *Id.* at 10.

DeWaters's claims are belied by the record—and by her own previous filings.  In her complaint and in her memorandum of law opposing summary judgment, DeWaters repeatedly asserted that D'Youville fired her to save money.  *See* Docket Item 1 at ¶ 16 (stating that "[t]o save money" and "[a]s a cost[-]saving matter, [D'Youville] opted to staff . . . courses in the C&I Program with part-time, low-cost adjuncts—rather than full-time, senior, tenured, high-cost faculty"); *id.* at ¶ 18 ("Hiring a host of low-cost adjuncts without fringe[ ]benefits and tasking two junior administrators to teach in the C&I Program . . . clearly evidences [D'Youville's] cost-saving motive to fire [DeWaters].  Simply stated, seniority-driven cost savings is the obvious reason [D'Youville] fired [DeWaters]." (emphasis omitted)); *id.* at ¶ 22 ("Simply stated, retaining and reassigning tenured [Department] faculty proved too costly based on their seniority."); *id.* at ¶ 23 ("[D'Youville] fired [DeWaters] because her seniority or age commanded a high salary.  In this case[,] age discrimination and cost[ ]savings are inseparably linked."); *see* Docket Item 39 at 5-7 (repeating almost verbatim the just-quoted statements).

Indeed, even as she attempts to recharacterize those previous allegations in her objections, DeWaters still says that "[D'Youville] pursued cost-cutting measures by getting rid of older (perhaps more expensive) employees and replacing them with younger (perhaps less expensive) workers."  Docket Item 48 at 10.  But if D'Youville was pursuing "cost-cutting measures" as DeWaters says it was, it is not liable under the

ADEA.  *See Criley,* 119 F.3d at 105.  So DeWaters's attempt to discredit the R&R by charging that Judge Roemer mischaracterized what she said misses the mark.

### B.    Consideration of Congressional Findings

According to DeWaters, "[t]he R&R declares that disposing of older, higher paid workers *cannot be* evidence of age discrimination," a conclusion that "ignores the congressional findings that caused the promulgation of the ADEA in the first place." Docket Item 48 at 3.

But "the R&R" did not "declare[]" that employment decisions based on economic factors—even factors correlated with age—are not actionable under the ADEA.  The Supreme Court did in *Hazen*, and lower courts have applied that ruling in cases like this one.  *See Hazen*, 507 U.S. at 610; *Criley*, 119 F.3d at 105 (rejecting ADEA claim where an employers' comments, at most, "express[ed] considerations of the business effects of the federally mandated retirement age, not assumptions about employees' abilities based on their age" because "[o]n the reasoning of *Hazen*, considering and acting on such factors is not age discrimination"); *Naftchi v. N.Y. Univ.*, 14 F. Supp. 2d 473, 482 (S.D.N.Y. 1998) (holding that the fact that "the awarding of federal grants may be correlated inversely with age . . . does not tend to prove that the real reason for [an employment-related decision was] age animus" because "[*Hazen*] made clear that employment decisions driven by factors that are empirically intertwined with age are not discriminatory so long as they are motivated by some feature other than the employee's age" (footnotes and internal quotation marks omitted)); *cf. Parron v. Herbert*, 768 F. App'x 75, 76 (2d Cir. 2019) (summary order) (citing *Criley* and holding that "[e]ven if [as the plaintiff alleged] a correlation between learning difficulties and age existed, an

15

adverse employment action based on th[o]se difficulties would not constitute age discrimination under the ADEA"). And because this Court has no power to overturn Supreme Court decisions, it declines to consider whether *Hazen Paper* was consistent with Congress's intent in passing the ADEA.[6]

## C.   Consideration of DeWaters's Chart

DeWaters next contends that the R&R erred by finding a document "demonstrating that [DeWaters's] work continued to be performed by younger workers" to be "inadmissible hearsay" and therefore declining to consider it. Docket Item 48 at 3. She seems to argue that Judge Roemer erred in failing to find that the document created an "inference of discrimination" sufficient to satisfy the fourth requirement of a *prima facie* case. *See Bucalo*, 691 F.3d at 129.

The document at issue is a chart that purports to show the ages of instructors who taught in the C&I Program in 2019. *See* Docket Item 39-4. In fact, the chart is the only exhibit DeWaters cites to support her claim that "courses [in the C&I Program] were taught by younger, low cost, less qualified" instructors. *See* Docket Item 39-1 at 14; Docket Item 39 at 15-16. But DeWaters did not provide the source of the chart (or the information in the chart) either before Judge Roemer or in her objections. *See generally*

---

[6] In addition, the "congressional findings" that DeWaters cites in support of her argument here appear to be irrelevant. Docket Item 48 at 10. She quotes the statute's preamble, which states that "in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs." 29 U.S.C. § 621(a)(1); *see* Docket Item 48 at 10. But that text has little to do with the question of whether Congress intended economic-based employment decisions that disproportionately affect older workers to be actionable under the ADEA.

Docket Items 39, 39-1, 39-4, 48; *see also* Docket Item 45 at 10.  Moreover, DeWaters herself stated during her deposition that she had no personal knowledge regarding the ages of any of the 2019 C&I instructors.  *See* Docket Item 32-3 at 19, 26.

In light of those facts, this Court, like Judge Roemer, "can only conclude that th[e] chart is hearsay presented by affidavit of [DeWaters's] counsel, who also lacks personal knowledge."  Docket Item 45 at 10.  As such, the chart—apparently based on nothing more than the attorney's say-so—fails to create a "genuine issue of material fact."  *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A]n affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *see also Johnson v. Connecticut Dep't of Admin. Servs.*, 972 F. Supp. 2d 223, 244 (D. Conn. 2013), *aff'd*, 588 F. App'x 71 (2d Cir. 2015) (collecting cases for the proposition that "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment").  And that certainly does not help DeWaters meet her *prima facie* burden.

### D.    D'Youville's Legitimate Nondiscriminatory Reason

DeWaters argues that Judge Roemer erred in finding that she "failed to rebut . . . [the nondiscriminatory] reason for termination" asserted by D'Youville.  Docket Item 48 at 4 (bolding omitted).  She says that a plaintiff is required to rebut a defendant's proffered legitimate nondiscriminatory reason for termination only when "there is no direct evidence of discriminatory bias," *id.* at 4, but that "there is direct evidence of discriminatory intent" here, "as alleged in other cases in this [D]istrict" brought against D'Youville," *id.* at 11 (emphasis omitted).  In particular, DeWaters cites a verified complaint filed by a D'Youville professor who lost her position as a department

17

chair.  *Id.* at 11 (citing *Olivieri v. D'Youville Coll.*, Case No. 18-cv-1026, Docket Item 1 at ¶¶ 68-72 (W.D.N.Y. Sept. 17, 2018); *see Olivieri*, Case No. 18-cv-1026, Docket Item 1 at ¶ 52.  DeWaters notes that the "verified complaint having the effect of an affidavit" in that case included an assertion that D'Youville's "officers have made many statements to the effect that [D'Youville] wants 'fresh young eyes.'" Docket Item 48 at 11 (citing *Olivieri*, Case No. 18-cv-1026, Docket Item 1 at ¶ 72).

DeWaters is correct that when a plaintiff offers direct evidence that an employer discriminated on the basis of age, the *McDonnell Douglas* framework does not apply. *Johnson*, 49 F.3d at 79.  But DeWaters has not offered direct evidence that D'Youville fired her based on her age; rather, she asserts that "there is" such evidence.  And the evidence she cites is nothing more than the assertions of a plaintiff in another case that some unnamed "officers" at D'Youville "made many statements" at some unnamed time and place that were apparently heard by some unnamed others.  *See* Docket Item 48 at 11.  That is far from direct evidence of discrimination.

What is more, because DeWaters never submitted that alleged "direct evidence" to the magistrate judge in opposing summary judgment, *see generally* Docket Items 1, 39, *see also* Docket Item 52 at 10; Docket Item 52-1 at 1 (statement of D'Youville's attorney that DeWaters never produced the complaint in *Olivieri* during discovery or otherwise "raised [it] in any of the underlying papers in connection with [D'Youville's] [m]otion for [s]ummary [j]udgment"), this Court will not consider it here.[7]  *See Pan Am.*

---

[7] Even if it could consider DeWaters's allegedly "direct evidence" from *Olivieri* here, the Court notes that (1) it was not based on personal knowledge of the plaintiff in that case, *see Patterson*, 375 F.3d at 219 (verified complaint "has the effect of an affidavit and may be relied on to oppose summary judgment" only "to the extent that it makes allegations on the basis of the plaintiff's personal knowledge"), and (2) it

*World Airways, Inc. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) (party "had no right to present further [evidence] when it offered no justification for not offering the [evidence] . . . before the magistrate [judge]"); *United States v. Hunt*, 440 F. Supp. 3d 221, 224 (W.D.N.Y. 2020) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."). So that objection lacks merit as well.

### E.   Consideration of D'Youville's Legitimate, Nondiscriminatory Reason

Finally, DeWaters reiterates that just as Judge Roemer "failed to determine whether [D'Youville] ha[d] foreclosed on [sic] the possibility of a *prima facie* case," he likewise failed to require D'Youville to "conclusively prove" the legitimate nondiscriminatory reason it offered. Docket Item 48 at 3-4. But as DeWaters apparently acknowledges, an employer's proffer of a legitimate, nondiscriminatory reason for terminating a plaintiff's employment comes into play only if the plaintiff succeeds in establishing a *prima facie* case. *See* Docket Item 48 at 16; *Schnabel*, 232

---

concerns an entirely different set of circumstances than that at issue here. Further, "the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination." *Abdu-Brisson*, 239 F.3d at 468. So even if DeWaters had properly and timely introduced the statements, they likely would not have been enough to defeat summary judgment.

Finally, although DeWaters does not provide citations to the other cases that have been brought against D'Youville in this District for violations of the ADEA, the Court notes that in at least one of those cases, the judge granted summary judgment to D'Youville on the plaintiff's ADEA claim. *See Kaczmarek v. D'Youville Coll.*, 2023 WL 4186160, at *8 (W.D.N.Y. June 26, 2023). *Kaczmarek* was brought by another professor who lost her job when the Department was discontinued. *Id.* at *1.

F.3d at 87.  And for the reasons already explained,  DeWaters did not establish such a case here.

In any event, and as also noted above, the party moving for summary judgment is not required to make such a showing.  Instead, once the party moving for summary judgment has met its Rule 56 burden by "point[ing] to an absence of evidence to support an essential element of the [non-moving] party's claim," *Goenaga*, 51 F.3d at 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23), the non-moving party must produce "specific facts" demonstrating that there is a genuine dispute of material fact.  *See Matsushita*, 475 U.S. at 587.  And it must "properly support" those assertions by citing materials in the record that meet the standards in Federal Rule of Civil Procedure 56(c). Because D'Youville met its initial burden and DeWaters did not meet hers, Judge Roemer correctly concluded that summary judgment was appropriate here.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(e)(3).

## **CONCLUSION**

In sum, this Court finds that Judge Roemer applied the correct legal standard in assessing summary judgment here.  Further, it agrees with Judge Roemer that DeWaters "offer[ed] no evidence, circumstantial or direct, to create an inference that D'Youville fired her due to age discrimination," Docket Item 45 at 8, and it therefore adopts the R&R in its entirety.  For the reasons stated above and in the R&R, D'Youville's motion for summary judgment, Docket Item 32, is GRANTED.  The Clerk of the Court shall close this case.

SO ORDERED.

Dated:      January 5, 2024
            Buffalo, New York


                                        _/s/ Lawrence J. Vilardo_____
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE